IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

GOLDEN GATE NATIONAL
SENIOR CARE LLC, et al., :
    Petitioners : No. 1:16-cv-898
     :
    v. : (Judge Kane)
     :
DONNA M. BATEMAN, :
Administratrix for the Estate of DORIS :
J. SNYDER, deceased, :
    Respondent :

## MEMORANDUM

Before the Court is Petitioners Golden Gate National Senior Care LLC's, et al.,[1] motion to compel arbitration and stay state court proceedings. (Doc. No. 7.) For the following reasons, the Court will deny without prejudice the motion to compel.

**I.    BACKGROUND**

Petitioners are eight business entities (Doc. No. 1 ¶¶ 2-9), and Respondent Donna M. Bateman is the administratrix of the estate of her mother Doris J. Snyder (Id. ¶¶ 11-12). From June 15, 2012 to March 15, 2014, Snyder resided at one of Petitioners' nursing home facilities, Golden LivingCenter – West Shore Facility ("the Facility"), in Camp Hill, Pennsylvania. (Id. ¶ 11.) Around the time of Snyder's admission to the Facility, Respondent Bateman allegedly signed an arbitration agreement ("Arbitration Agreement") on Synder's behalf and pursuant to a durable power of attorney dated March 15, 2012. (Id. ¶¶ 18-19.)

On April 25, 2016, Respondent Bateman filed a complaint in the Court of Common Pleas of Cumberland County, Pennsylvania against the Petitioners, Beverly Fry, and Denise Curry.

---

[1] Petitioners are "Golden Gate National Senior Care, LLC; GGNSC Camp Hill West Shore, LP, d/b/a Golden LivingCenter – West Shore; GGNSC Camp Hill West Shore GP, LLC; GPH Camp Hill West Shore, LP; GGNSC Equity Holdings, LLC; GGNSC Holdings, LLC; GGNSC Administrative Services, LLC; and GGNSC Clinical Services, LLC." (Doc. No. 7 n.1.)

1

(Doc. Nos. 1 ¶ 26; 1-2.) In her state-court complaint, Respondent Bateman brought three counts against Respondents, alleging inter alia that Petitioners insufficiently staffed the Facility, failed to provide the resources necessary for Snyder, and caused injury to Snyder as of result of their negligence, carelessness, and recklessness. (Doc. No. 1-2 ¶¶ 42, 46, 51, 89, 105-109, 120, 129.) Respondent Bateman brought her second and third count pursuant to 42 Pa. C.S. § 8302 ("Survival Statute") and 42 Pa. C.S. § 8301 ("Wrongful Death Statute"), respectively. (Id. ¶¶ 124, 133.)

On May 16, 2016, Petitioners filed a petition for order compelling arbitration with this Court. (Doc. No. 1.) In their petition, Petitioners bring a count to compel arbitration under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, a count to enjoin Respondent from pursuing the state-court action, and a count for declaratory relief. (Id.) Petitioners attach the Arbitration Agreement to their petition. (Doc. No. 1-3.) On May 27, 2016, Petitioners filed a motion to compel arbitration pursuant to the FAA, 9 U.S.C. §§ 1-16. (Doc. No. 7.) Petitioners filed a brief in support on May 27, 2016 (Doc. No. 8.) Respondent filed a brief in opposition on July 7, 2016 (Doc. No. 13), a motion for leave to file a supplemental brief and for arbitration-related discovery on July 25, 2016 (Doc. No. 16), and a supplemental brief in opposition on July 25, 2016 (Doc. No. 17).

On March 7, 2017, the parties informed this Court that, in accordance with a December 8, 2016 stipulated order in the underlying state court proceedings, the parties have begun to conduct arbitration-related discovery in order for Respondent to "explore her contract defenses." (Doc. No. 30-1 ¶¶ 4, 6; 31 at 7.) The parties also report being currently engaged in a discovery dispute in the underlying state court proceedings over the deposition of an admissions employee. (Doc.

No. 30 at 2-3; 31 at 2.) Petitioners' motion to compel has been fully briefed and is now ripe for disposition.

## II. LEGAL STANDARD

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, provides the "body of federal substantive law establishing and governing the duty to honor agreements to arbitrate disputes" and expresses a "strong federal policy in favor of resolving disputes through arbitration." Century Indem. Co. v. Certain Underwriters at Lloyd's, London, 584 F.3d 513, 522 (3d Cir. 2009). Even in light of the FAA, however, arbitration is "strictly a matter of contract." Bel-Ray Co. v. Chemrite (Pty) Ltd., 181 F.3d 435, 444 (3d Cir. 1999). "If a party has not agreed to arbitrate, the courts have no authority to mandate that he do so." Id. "Thus, in deciding whether a party may be compelled to arbitrate under the FAA, we first consider '(1) whether there is a valid agreement to arbitrate between the parties and, if so, (2) whether the merits-based dispute in question falls within the scope of that valid agreement.'" Flintkote Co. v. Aviva PLC, 769 F.3d 215, 220 (3d Cir. 2014) (quoting Century Indem., 584 F.3d at 527).

As to the first question, the United States Court of Appeals for the Third Circuit has recently clarified "the standard for district courts to apply when determining whether, in a specific case, an agreement to arbitrate was actually reached." Guidotti v. Legal Helpers Debt Resolution, L.L.C., 716 F.3d 764, 771 (3d Cir. 2013). In effect, to determine whether there is a valid agreement to arbitrate, a district court "must initially decide whether the determination is made under Fed.R.Civ.P. 12(b)(6) or 56." Sanford v. Bracewell & Guiliani, LLP, No. 14-1763, 2015 WL 4035614, at *2 (3d Cir. July 2, 2015). The Rule 12(b)(6) standard is appropriate where "it is apparent, based on 'the face of a complaint, and documents relied upon in the complaint,' that certain of a party's claims 'are subject to an enforceable arbitration clause.'" Guidotti, 716

F.3d at 776; accord Sanford, 2015 WL 4035614, at *2.  In such cases, a court may "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." Guidotti, 716 F.3d at 772 (quoting Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010)).

In contrast, the Rule 56 standard is appropriate: (1) where "the motion to compel arbitration does not have as its predicate a complaint with the requisite clarity to establish on its face that the parties agreed to arbitrate," or (2) where "the opposing party has come forth with reliable evidence that is more than a naked assertion ... that it did not intend to be bound by the arbitration agreement, even though on the face of the pleadings it appears that it did."  Guidotti, 716 F.3d at 774; accord Sanford, 2015 WL 4035614, at *2.  In such cases, the district court should allow limited discovery on the question of arbitrability before "entertaining [the] motion [to compel arbitration] under a summary judgment standard."  Guidotti, 716 F.3d at 780.

## III. DISCUSSION

Petitioners move the Court to determine that a valid agreement to arbitrate exists under the Rule 12(b)(6) standard, compel arbitration, and stay the state court proceedings.  (Doc. No. 7.)  Respondent contends that her wrongful death claims are not subject to arbitration because Petitioners did not obtain the signatures of two wrongful death beneficiaries.  (Doc. No. 13 at 3.) As to Respondent's survival claims, she seeks an opportunity to conduct discovery to determine whether a "meeting of the minds" occurred, whether any contract defenses exist, and whether Petitioners' relationship with their arbitration provider, JAMS, "poses a real threat to an injured resident's ability to a fair and impartial proceeding."  (Id. at 9-11.)

As discussed above, the Court must decide (1) whether the complaint facially establishes arbitrability; and (2) if so, whether Plaintiff has put forward "reliable evidence that is more than

a naked assertion ... that it did not intend to be bound by the arbitration agreement, even though on the face of the pleadings it appears that it did." Guidotti, 716 F.3d at 774.[2] This inquiry requires the Court to distinguish between (1) a "mere naked assertion that [Plaintiff] did not intend to be bound by the terms" of an arbitration agreement and (2) a "not insubstantial" amount of evidence in response to the arbitration motion. Id. at 777, 779 (internal quotations and citations omitted).

Here, the operative pleading for the Guidotti analysis is Petitioners' petition for order compelling arbitration to which Petitioners attached the Arbitration Agreement. (Doc. Nos. 1, 1-2); see Golden Gate Nat. Sr. Care, LLC v. Sulpizio, No. 15-00174, 2015 WL 4878348, at *3 (M.D. Pa. Aug. 14, 2015). The Arbitration Agreement purports to be signed by Respondent on behalf Doris J. Snyder and provides, in relevant part, as follows:

> **THE PARTIES UNDERSTAND, ACKNOWLEDGE, AND AGREE THAT THEY ARE SELECTING A METHOD OF RESOLVING DISPUTES WITHOUT RESORTING TO LAWSUITS OR THE COURTS, AND THAT BY ENTERING INTO THIS AGREEMENT, THEY ARE GIVING UP THEIR CONSTITUTIONAL RIGHT TO HAVE THEIR DISPUTES DECIDED IN A COURT OF LAW BY A JUDGE OR JURY, THE OPPORTUNITY TO PRESENT THEIR CLAIMS AS A CLASS ACTION AND/OR TO APPEAL ANY DECISION OR AWARD OF DAMAGES RESULTING FROM THE ADR PROCESS EXCEPT AS PROVIDED HEREIN.**

(Doc. No. 1-3 at 2-5) (emphasis in original). However, in her answer and opposition to the pending motion to compel, Respondent Bateman asserts that the Arbitration Agreement is a "procedurally and substantively unconscionable contract of adhesion" (Doc. No. 14 at 7), and, further, substantively unconscionable given JAMS' alleged, institutional bias (see Doc. Nos. 13 at 10-11, 13; 14 at 7).

---

[2] "To determine whether there is a valid agreement to arbitrate between [the parties], we must initially decide whether the determination is made under Fed. R. Civ. P. 12(b)(6) or 56 and thus, what materials we may consider." Sanford v. Bracewell & Guiliani, LLP, 618 F. App'x 114, 117 (3d Cir. 2015).

Upon consideration of the standard articulated in Guidotti, the Court finds that the assertions made in response to Petitioners' motion constitute more than a "naked assertion" that Plaintiff did not intend to be bound by the Arbitration Agreement. Guidotti, 716 F.3d at 777 & n.5, 779 ("Pre-arbitration discovery has also been allowed to determine whether an arbitration clause is unconscionable"); see Golden Gate Nat. Sr. Care, LLC v. Sulpizio, No. 15-00174, 2015 WL 4878348, at *4 (M.D. Pa. Aug. 14, 2015). Accordingly, the parties are "entitled to discovery on the question of arbitrability before a court entertains further briefing on [the] question."[3] Guidotti, 716 F.3d at 777, 779. However, given that the parties have already begun to conduct arbitration-related discovery in the underlying state court proceeding (Doc. No. 30-1 ¶¶ 4, 6; 31 at 7),[4] Petitioners may renew their motion to compel arbitration and stay state court proceedings after the parties complete the ongoing, arbitration-related discovery.

## IV.   CONCLUSION

The Court will deny without prejudice Petitioners' motion to compel arbitration. An order consistent with this memorandum follows.

---

[3] The Third Circuit has specified the next steps in addressing the issue of arbitrability: "[A] restricted inquiry into factual issues will be necessary to properly evaluate whether there was a meeting of the minds on the agreement to arbitrate, and the non-movant must be given the opportunity to conduct limited discovery on the narrow issue concerning the validity of the arbitration agreement." Guidotti, 716 F.3d at 774 (internal citations and quotations omitted).

[4] In her filings before this Court, Respondent Bateman has not raised an abstention argument or cited the authority of Colorado River Water Conservation District v. United States, 424 U.S. 800 (1976). Accordingly, absent any briefing and given the procedural posture of the underlying state court proceeding, the Court declines, at this stage, to sua sponte address the matter of abstention.